ROB BONTA
Attorney General of California
CHARLES C. RAGLAND
Chief Assistant Attorney General
SUSAN SULLIVAN PITHEY
Senior Assistant Attorney General
JASON TRAN
Supervising Deputy Attorney General
KENNETH C. BYRNE
Supervising Deputy Attorney General
State Bar No. 117798
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6008
Fax: (916) 731-2143
E-mail: DocketingLAAWT@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TRAVIS EDWARD MARTIN,**<br>Petitioner,<br>**v.**<br>**RAFAEL ACEVEDO,**<br>Respondent. | Case No. CV 25-11643-SPG-ACCV<br><br>**ANSWER TO FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>The Honorable Angela C. C. Viramontes<br>United States Magistrate Judge |

# TABLE OF CONTENTS


| | Page |
|---|---|
| Memorandum of Points and Authorities | 1 |
| Preliminary Statement | 1 |
| Statement of Facts | 3 |
| A. Background Information | 3 |
| B. Jane Doe's Testimony | 3 |
| C. Doe's Reports to Natalie | 4 |
| D. Police Investigation and Petitioner's Arrest | 5 |
| E. Section 1108 Testimony | 5 |
| F. CSAAS | 7 |
| Standard of Review | 7 |
| Argument | 11 |
| I. Ground One Does Not Present A Federal Constitutional Claim, And In Any Event The AEDPA Precludes The Relitigation Of Ground One As The CSAAS Testimony Was Properly Admitted And The Use Of Calcrim No. 1193 Did Not Violate Petitioner's Sixth Amendment Rights | 11 |
| A. The Applicable Law | 11 |
| B. The California Court of Appeal's Denial of Relief | 12 |
| C. This Claim Is Not Cognizable | 14 |
| D. There Is No Clearly Established Federal Law on This Point | 15 |
| E. This Claim Fails in Any Event, As CSAAS Evidence Does Not Conclusively Prove Any Fact, And Certainly Does Not Show That A Specific Victim Of Sexual Abuse Is Credible | 17 |
| F. The Use of CALCRIM No. 1193 In Petitioner's Trial Did Not Violate His Sixth Amendment Rights | 23 |
| G. Any Evidentiary or Instructional Error Did Not Prejudice Petitioner | 25 |
| II. Ground Two Is Procedurally Barred, And In Any Event Fails Under the AEDPA as the Prosecutor's Brief and Isolated Misstatement Concerning the Propensity Evidence Did Not Prejudice Petitioner | 29 |
| A. The Applicable Law | 29 |
| B. The California Court of Appeal's Denial of Relief | 30 |
| C. This Claim Is Procedurally Barred | 31 |
| D. Petitioner Was Not Prejudiced in Any Event | 33 |

## TABLE OF CONTENTS
## (continued)

Page

III. Ground Three Also Fails to Present a Federal Constitutional Claim, and In Any Event the Admission of Propensity Evidence Did Not Render Petitioner's Trial Fundamentally Unfair .................. 35

A. The Applicable Law .................. 36

B. The California Court of Appeal's Denial of Relief .................. 37

C. This Claim Is Not Cognizable .................. 38

D. This Claim Fails in Any Event, As the Admitted Propensity Evidence Permissibly Tended to Prove That Petitioner Was Predisposed to Molest Young Children .................. 38

E. Any Error Did Not Prejudice Petitioner .................. 42

Conclusion .................. 43

# TABLE OF AUTHORITIES

**Page**

**CASES**


*Amaya v. Frauenheim*
823 F. App'x 503 (9th Cir. 2020) .......... 16, 19

*Andrew v. White*
604 U.S. 86 (2025) (per curiam) .......... *passim*

*Ayala v. Chappell*
829 F.3d 1081 (9th Cir. 2016) .......... 29

*Barkley v. Beard*
2014 WL 991094 (N.D. Cal. Mar. 11, 2014) .......... 24

*Beard v. Kindler*
558 U.S. 53 (2009) .......... 31

*Bemore v. Chappell*
788 F.3d 1151 (9th Cir. 2015) .......... 10

*Bennett v. Mueller*
322 F.3d 573 (9th Cir. 2003) .......... 33

*Berghuis v. Thompkins*
560 U.S. 370 (2010) .......... 8

*Bonin v. Calderon*
59 F.3d 815 (9th Cir. 1995) .......... 32, 33

*Boyde v. Brown*
404 F.3d 1159 (9th Cir. 2005) .......... 11, 18

*Bradshaw v. Richey*
546 U.S. 74 (2005) (per curiam) .......... 14

*Brecht v. Abrahamson*
507 U.S. 619 (1993) .......... *passim*

*Brodit v. Cambra*
350 F.3d 985 (9th Cir. 2003) .......... 19, 20

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Calderon v. Coleman*
525 U.S. 141 (1998) (per curiam) .......... 26

*Camper v. Workers' Comp. Appeals Bd.*
3 Cal. 4th 679 (1992) .......... 8

*Carey v. Musladin*
549 U.S. 70 (2006) .......... 15

*Clark v. Brown*
450 F.3d 898 (9th Cir. 2006) .......... 17, 26

*Coleman v. Thompson*
501 U.S. 722 (1991) .......... 32

*Cupp v. Naughten*
414 U.S. 141 (1973) .......... 23

*Darden v. Wainwright*
477 U.S. 168 (1986) .......... 29, 30

*Davis v. Ayala*
576 U.S. 257 (2015) .......... 26

*Donnelly v. DeChristoforo*
416 U.S. 637 (1974) .......... 30

*Dowling v. United States*
493 U.S. 342 (1990) .......... 37

*Duckett v. Godinez*
67 F.3d 734 (9th Cir. 1995) .......... 29

*Duncan v. Henry*
513 U.S. 364 (1995) .......... 26

*Estelle v. McGuire*
502 U.S. 62 (1991) .......... *passim*

*Fields v. Woodford*
309 F.3d 1095 (9th Cir. 2002) .......... 30

## TABLE OF AUTHORITIES
## (continued)


Page

*Fry v. Pliler*
551 U.S. 112 (2007) .......... 26

*Frye v. United States*
293 F. 1013 (D.C. Cir. 1923) .......... 12

*Gersten v. Senkowski*
426 F.3d 588 (2d Cir. 2005) .......... 9

*Gilmore v. Taylor*
508 U.S. 333 (1993) .......... 17

*Greene v. Fisher*
565 U.S. 34 (2011) .......... 15

*Harrington v. Richter*
562 U.S. 86 (2011) .......... 7, 9, 35

*Harris v. Reed*
489 U.S. 255 (1989) .......... 32

*Hendricks v. Vasquez*
974 F.2d 1099 (9th Cir. 1992) .......... 38

*Henry v. Estelle*
33 F.3d 1037 (9th Cir. 1993) .......... 26

*Higgins III v. Kernan*
2020 WL 6385810 (C.D. Cal. Sept. 11, 2020) .......... 16

*Holley v. Yarborough*
568 F.3d 1091 (9th Cir. 2009) .......... 12

*Houston v. Roe*
177 F.3d 901 (9th Cir. 1999) .......... 23

*Jackson v. Virginia*
443 U.S. 307 (1979) .......... 7

*Jammal v. Van de Kamp*
926 F.2d 918 (9th Cir. 1991) .......... 22

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Johnson v. Lee*
578 U.S. 605 (2016) (per curiam) .......... 32

*Johnson v. Texas*
509 U.S. 350 (1993) .......... 23, 24

*Johnson v. Williams*
568 U.S. 289 (2013) .......... 7, 9, 10

*Kipp v. Davis*
971 F.3d 939 (9th Cir. 2020) .......... 35

*Knowles v. Mirzayance*
556 U.S. 111 (2009) .......... 15

*Lacy v. Lewis*
123 F. Supp. 2d 533 (C.D. Cal. 2000) .......... 15

*Langford v. Day*
110 F.3d 1386 (9th Cir. 1996) .......... 14

*Larrimore v. Scribner*
365 F. App'x 858 (9th Cir. 2010) .......... 33

*Larson v. Palmateer*
515 F.3d 1057 (9th Cir. 2008) .......... 26

*Lockyer v. Andrade*
538 U.S. 63 (2003) .......... 15

*Lopez v. Smith*
574 U.S. 1 (2014) (per curiam) .......... 16

*Marks v. Davis*
106 F.4th 941 (9th Cir. 2024) .......... 35

*Marshall v. Rodgers*
569 U.S. 58 (2013) .......... 16

*Martinez-Villareal v. Lewis*
80 F.3d 1301 (9th Cir. 1996) .......... 33

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Matias v. Gipson*
2015 WL 5935324 (N.D. Cal. Oct. 13, 2015) ........ 24, 27

*McCleskey v. Zant*
499 U.S. 467 (1991) ........ 33

*Mendez v. Paramo*
2019 WL 8643747 (C.D. Cal. Dec. 31, 2019) ........ 16, 19

*Mendez v. Small*
298 F.3d 1154 (9th Cir. 2002) ........ 14

*Menendez v. Terhune*
422 F.3d 1012 (9th Cir. 2005) ........ 17

*Metrish v. Lancaster*
569 U.S. 351 (2013) ........ 15

*Middleton v. McNeil*
541 U.S. 433 (2004) ........ 23

*Murdaugh v. Ryan*
724 F.3d 1104 (9th Cir. 2013) ........ 10

*Murray v. Carrier*
477 U.S. 478 (1986) ........ 33

*Noble v. Adams*
2020 WL 4001479 (N.D. Cal. July 15, 2020) ........ 16

*Park v. California*
202 F.3d 1146 (9th Cir. 2000) ........ 14

*Patsalis v. Shinn*
4 F.4th 1092 (9th Cir. 2023) ........ 9, 10

*Paulino v. Castro*
371 F.3d 1083 (9th Cir. 2004) ........ 33

*Payne* v. *Tennessee*
501 U.S. 808 (1991) ........ *passim*

## TABLE OF AUTHORITIES
## (continued)


**Page**

*People v. Bowker*
203 Cal. App. 3d 385 (1988) ........ 20

*People v. Boyer*
38 Cal. 4th 412 (2006) ........ 9, 10

*People v. Branch*
91 Cal. App. 4th 274 (2001) ........ 42

*People v. Brown*
33 Cal. 4th 892 (2004) ........ 18

*People v. Centeno*
60 Cal. 4th 659 (2014) ........ 29

*People v. Daveggio and Michaud*
4 Cal. 5th 790 (2018) ........ 36

*People v. Falsetta*
21 Cal. 4th 903 (1999) ........ 36

*People v. Gonzales*
16 Cal. App. 5th 494 (2017) ........ 13

*People v. Julian*
34 Cal. App. 5th 878 (2019) ........ 18

*People v. Kelly*
17 Cal. 3d 24 (1976) ........ 12

*People v. Lapenias*
67 Cal. App. 5th 162 (2021) ........ 18

*People v. Mateo*
243 Cal. App. 4th 1063 (2016) ........ 18

*People v. McAlpin*
53 Cal. 3d 1289 (1991) ........ 18, 20

*People v. Merriman*
60 Cal. 4th 1 (2014) ........ 36, 42

## TABLE OF AUTHORITIES
## (continued)

**Page**


*People v. Munch*
52 Cal. App. 5th 464 (2020) .......... 18

*People v. Patino*
2 Cal. App. 4th 1737 (1994) .......... 18

*People v. Robertson*
208 Cal. App. 4th 965 (2012) .......... 42

*People v. Waples*
79 Cal. App. 4th 1389 (2000) .......... 42

*People v. Wilson*
33 Cal. App. 5th 559 (2019) .......... 18

*Poland v. Stewart*
169 F.3d 573 (9th Cir. 1999) .......... 32

*Premo v. Moore*
562 U.S. 115 (2011) .......... 15

*Renico v. Lett*
559 U.S. 766 (2010) .......... 7

*Rich v. Calderon*
187 F.3d 1064 (9th Cir. 1999) .......... 32

*Rodriguez v. Spearman*
2014 WL 2465945 (E.D. Cal. May 29, 2014) .......... 24

*Romano v. Oklahoma*
512 U.S. 1 (1994) .......... 12

*Rowland v. Chappell*
876 F.3d 1174 (9th Cir. 2017) .......... 30

*Sandoval v. Calderon*
241 F.3d 765 (9th Cir. 2000) .......... 30, 34

*Sechrest v. Ignacio*
549 F.3d 789 (9th Cir. 2008) .......... 30

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Sullivan v. Louisiana*
508 U.S. 275 (1993) ........ 9

*Swarthout v. Cooke*
562 U.S. 216 (2011) (per curiam) ........ 11

*Teague v. Lane*
489 U.S. 288 (1989) ........ 1

*United States v. Antone*
981 F.2d 1059 (9th Cir. 1992) ........ 19

*United States v. Bighead*
128 F.3d 1329 (9th Cir. 1997) (per curiam) ........ 19

*United States v. Foster*
243 F. App'x 315 (9th Cir. 2007) ........ 41

*United States v. Jones*
425 F.2d 1048 (9th Cir. 1970) ........ 40

*United States v. Larios*
640 F.2d 938 (9th Cir. 1981) ........ 40

*Vansickel v. White*
166 F.3d 953 (9th Cir. 1999) ........ 32

*Varghese v. Uribe*
736 F.3d 817 (9th Cir. 2013) ........ 15

*Waddington v. Sarausad*
555 U.S. 179 (2009) ........ 23

*Wainwright v. Sykes*
433 U.S. 72 (1977) ........ 32

*Walker v. Martel*
709 F.3d 925 (9th Cir. 2013) ........ 28

*Weeks v. Angelone*
528 U.S. 225 (2000) ........ 27, 28, 34

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Williams v. Taylor*
529 U.S. 362 (2000) .......... 15

*Wright v. Van Patten*
552 U.S. 120 (2008) .......... 15

*Yates v. Evatt*
500 U.S. 391 (1991) .......... 9

**STATUTES**

28 U.S.C.
§ 2254 .......... 7, 26
§ 2254(a) .......... 11
§ 2254(d) .......... 1, 7, 8
§ 2254(d)(1) .......... 15
§ 2254(e)(2) .......... 1

Cal. Evid. Code
§ 352 .......... 36, 39
§ 1101 .......... 36
§ 1108 .......... *passim*

Cal. Penal Code
§ 288(a) .......... 1, 6
§ 311.4(c) .......... 1, 6
§ 311.11(a) .......... 1
§ 667(a) .......... 1, 2
§ 667(c)(2) .......... 1
§ 667(e)(2) .......... 1
§ 667.61(a) & (d) .......... 1
§ 1170.12(a) & (d) .......... 1

## TABLE OF AUTHORITIES
## (continued)


**Page**

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution
Amendment V ........ 14
Amendment VI ........ *passim*
Amendment VIII ........ 21, 39
Amendment IX ........ 14
Amendment XIV ........ *passim*

**COURT RULES**

Fed. Rule Civ. Procedure
Rule 25(d) ........ 1

Fed. Rule of Evidence
Rule 413(a) ........ 36
Rule 414(a) ........ 37

**OTHER AUTHORITIES**

CALCRIM
No. 222 ........ 31
No. 1193 ........ *passim*

Respondent Mario Ramirez, Acting Warden of the Richard J. Donovan Correctional Facility, located in San Diego, California,[1] hereby admits, denies, and alleges as follows.

1. Petitioner is properly in the custody of the California Department of Corrections and Rehabilitation under the authority of a valid judgment and felony conviction in Ventura County Superior Court case number 2021029627, pursuant to which Petitioner is serving a state prison term of 610 years to life.

2. The First Amended Petition for Writ of Habeas Corpus ("FAP") filed herein appears to be timely.

3. The three claims set forth in the FAP appear to be exhausted.

4. Ground Two is procedurally barred.

5. No ground appears to be barred by the retroactivity principles discussed in *Teague v. Lane*, 489 U.S. 288 (1989).

6. The state court's denial of relief on the claims set forth in the FAP was neither contrary to, or an unreasonable application of, clearly established federal law, nor was the denial of relief based upon an unreasonable application of the facts presented in the state court proceedings. 28 U.S.C. § 2254(d).

7. No evidentiary hearing is necessary to resolve the claims set forth in the FAP because they may be resolved on the basis of the existing state court record, and moreover because Petitioner cannot meet the stringent requirements of 28 U.S.C. § 2254(e)(2).

8. Respondent denies each and every allegation of the FAP and specifically denies that Petitioner's custody is in any way improper, that the judgment underlying Petitioner's custody is in any way improper, and that his federal constitutional rights are being violated in any way.

[1] Mario Ramirez is Petitioner's current custodian. Substitution of the proper custodian's name is authorized by Federal Rule of Civil Procedure 25(d).

9. This Answer is based on the attached Memorandum of Points and Authorities, this Court's file, the copies of the state court documents which are being lodged concurrently herewith, and on such other matters as are properly submitted to the Court.

WHEREFORE, Respondent respectfully requests that the FAP be denied with prejudice.

Dated: October 13, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
CHARLES C. RAGLAND
Chief Assistant Attorney General
SUSAN SULLIVAN PITHEY
Senior Assistant Attorney General
JASON TRAN
Supervising Deputy Attorney General

***/s/ Kenneth C. Byrne***
KENNETH C. BYRNE
Supervising Deputy Attorney General
*Attorneys for Respondent*

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

A jury empaneled in Ventura County Superior Court case number 2021029627 found Petitioner guilty of seven counts of committing a lewd act upon a child (Cal. Penal Code[2] § 288(a); counts 1-7); posing or modeling a minor for sexual purposes (§ 311.4(c); count 8), and possession or control of child pornography (§ 311.11(a); count 9). As to all counts, Petitioner admitted that he had two prior serious or violent felony convictions that also qualified as strikes under California's Three Strikes Law. (§§ 667(a), (c)(2), & (e)(2), 1170.12(a) & (d).) As to counts 1 through 7, he admitted that he had two prior convictions for committing a lewd act upon a child. (§ 667.61(a) & (d)). The trial court sentenced Petitioner to state prison for a total of 610 years to life. The sentence was calculated as follows: twenty-five years to life tripled under the Three Strikes Law plus an additional five years pursuant to section 667(a) for each of the lewd act convictions, and twenty-five years to life for the other two convictions, each sentence to be served consecutively. (*See* Lodged Document ("LD") 1 at 1-2; LD 5 at 635-36.)[3]

Petitioner filed an opening brief in the California Court of Appeal which raised six claims: (1) the trial court committed prejudicial error when it admitted propensity evidence under California Evidence Code section 1108 ("section 1108"); (2) the prosecutor committed misconduct when he misled the jurors by telling them that all of the propensity evidence involved oral copulation and photography; (3) the court erred by admitting testimony regarding Child Sexual Abuse Accommodation Syndrome ("CSAAS"), which is unreliable scientific evidence that was not generally accepted by the scientific community; (4) Petitioner was

---

[2] All further statutory references are to the California Penal Code, unless otherwise specified.

[3] On July 1, 2026, Respondent electronically lodged copies of four state court documents. (ECF No. 10.) References to LD 1 through 4 will be to those documents. Concurrently with this Answer, Respondent is electronically lodging copies of the state court appellate record and the appellate briefs which were not lodged previously.

prejudiced by the cumulative effect of these errors; (5) the court abused its discretion when it denied Petitioner's request to strike the seven enhancements proved under section 667(a); and (6) the court abused its discretion and violated the prohibition against cruel and unusual punishment when it sentenced Petitioner to 610 years to life in state prison, a sentence which exceeds his life span. (LD 2.) On June 17, 2024, the California Court of Appeal affirmed the judgment of conviction. (LD 1.)

Petitioner then filed a petition for review in the California Supreme Court which raised four claims: (1) the propensity evidence admitted pursuant to section 1108 was remote, unreliable, dissimilar to the current offenses, and more prejudicial than probative; (2) the prosecutor committed misconduct when he misled the jurors by telling them that all of the propensity evidence involved oral copulation and photography; (3) the CSAAS testimony was unreliable "scientific" evidence that was not generally accepted by the scientific community; and (4) CALCRIM No. 1193 misstates the law and permits the jury to use CSAAS to determine whether Petitioner was guilty. (LD 3.) On August 21, 2024, the California Supreme Court denied review. (LD 4.)

On November 19, 2025, counsel for Petitioner filed a Petition for Writ of Habeas Corpus in the United States District Court for the Southern District of California. (ECF No. 1.) On November 21, 2025, the Southern District transferred the matter to the Central District. (ECF Nos. 3 & 4.) On July 1, 2026, Respondent filed a Motion to Dismiss, in which he argued that to the extent the document entitled "Supplemental Petition for Writ of Habeas Corpus by a Person in State Custody" filed by counsel as an attachment to the Petition was deemed to be part of the counseled Petition, the Petition should be dismissed unless Grounds Four and Five were deleted, or a stay was obtained. (ECF No. 9.) On August 31, 2026, Petitioner filed an FAP which does not include Grounds Four and Five (ECF No. 13) and an opposition to the Motion to Dismiss (ECF No. 14). On September 2,

2026, this Court denied Respondent's Motion to Dismiss as moot, stated that the operative petition in this matter is the FAP, and ordered Respondent to file a response to it. (ECF No. 15.) This Answer follows.

## STATEMENT OF FACTS[4]

### A. Background Information

Natalie Wald[5] met Petitioner through his parents, whom Natalie and her husband James Wald had met at church. Natalie and James had two children—a daughter, Jane Doe, and a son.

Petitioner's mother told Natalie Petitioner was incarcerated for child sexual abuse. Petitioner served a sentence of approximately three and a half years. In 2016, several years after Petitioner's release from prison, Petitioner and James became business partners when they purchased a company called Entertainment Technology. Petitioner paid for many family trips with the Walds, to places like Disneyland, June Lake, and Great Wolf Lodge. Petitioner also paid the private school tuition for the Wald children.

Natalie allowed Petitioner to take her children to his home in Oxnard, where he lived with his mother, once or twice a week. The children thought of Petitioner as a fun uncle and his mother as a grandmother.

### B. Jane Doe's Testimony

Jane Doe was seven years old when she testified at Petitioner's trial. At Great Wolf Lodge, after putting on her swimsuit, Petitioner licked her vagina. Later, after a swim, Petitioner licked Doe's vagina again. He also touched Doe's vagina with

[4] This factual summary is essentially taken verbatim from the California Court of Appeal's direct appeal opinion (*see* LD 1 at 2-7), with only minor modifications, such as replacing references to "appellant" with "Petitioner." Another statement of facts, with citations to the record and a summary of the defense case, is contained in the respondent's brief filed in the state court of appeal. (*See* LD 7 at 19-29.)

[5] The California Court of Appeal stated that it would refer to the Walds by their first names to avoid confusion, without intending any disrespect. It also said that it would refer to the charged victim as "Jane Doe" or "Doe." Respondent will do so as well.

his finger at Great Wolf Lodge. Petitioner forced Doe to put her mouth on his penis "a lot of times at his house." At his house, he also touched Doe's vagina with his fingers more than once. He orally copulated her at his home and at Disneyland. Petitioner told Doe that her mother would hate Doe if Doe told her what he was doing.

When she was about four years old, Doe told her mother Natalie about Petitioner's conduct. Natalie did not believe Doe at that time because Petitioner denied molesting her. Natalie later believed her when they talked at the park.

**C. Doe's Reports to Natalie**

Natalie testified that sometime before Doe turned five in February 2020, and likely shortly before September 28, 2019, Doe told Natalie Petitioner had licked her "hoo-hoo," Doe's word for vagina. Natalie called Petitioner, who denied Doe's allegations and said he could no longer spend time with Doe. Doe cried and stated she did not know why she said Petitioner had done that. Natalie did not contact Child Protective Services or the police. After a brief hiatus, Petitioner began seeing the children again, and the status quo returned within a few months.

On October 31, 2021, Petitioner and Natalie argued about Petitioner picking up and holding Doe. The argument escalated, and Natalie threatened to call the police. On November 3, 2021, Petitioner spoke to Natalie and her husband about Natalie no longer doing accounting work for Entertainment Technologies.

From Doe's initial report until November 2021, Natalie had asked Doe every few weeks if there had been "any licking going on," which Doe denied. On November 4, 2021, Natalie asked Doe if anyone ever touched her, and she said no. Natalie had a feeling Doe was lying. The next day, Natalie took Doe to the park and asked if she had any secrets. Doe said Petitioner licked her "hoohoo" and called it "cleaning," and he touched her "hoo-hoo" with his hands. Doe touched Petitioner's "privates" and put her mouth on it. Doe indicated the conduct occurred at Disneyland and June Lake. That same day, Natalie called the police.

**D. Police Investigation and Petitioner's Arrest**

On November 9, 2021, Detective Meagan Yates interviewed Doe, who was about six and a half years old at the time. Doe said when she was with Petitioner at Great Wolf Lodge, Petitioner touched her vagina with his fingers and made her touch his private part with her hands and mouth. Petitioner also touched her vagina with his fingers and tongue at his house in Oxnard. Doe said Petitioner called licking "cleaning" and told Doe not to tell her mother. Doe said Petitioner never took pictures of her but showed her a video of two four-year-old girls showering together.

Law enforcement found photos of a young female's exposed vaginal and anal area on Petitioner's iPad. One photo appeared to show an adult hand spreading the child's labia open to better expose her vagina. Detective Yates believed clothing the female in the photos wore matched Jane Doe's clothing, which Natalie had provided.

**E. Section 1108 Testimony**

Autumn F. was twenty-seven years old at the time of Petitioner's trial. Petitioner offered to babysit Autumn when her parents were divorcing. Autumn was eight when she and Petitioner began spending time alone. Petitioner took her to the movies, to toy stores, and on drives. When Autumn was nine, Petitioner asked her to take her clothes off at his shop. Petitioner wanted to photograph her, but she refused to smile until her clothes were back on. He inserted his fingers into her vagina for about twenty to thirty minutes, which hurt. Petitioner licked her vagina. He took quite a few photos of Autumn after she put her clothes back on.

Petitioner attempted to molest Autumn at Disneyland. He told his family she needed to take a nap. At the hotel room, Petitioner told Autumn to lie down. She did, and Petitioner climbed on top of her and tried to pull her pants down. Petitioner touched her vagina with his tongue over her underwear. He also visited Autumn's family at their home. For about a year, every time he came into

Autumn's room to say goodnight, he would put his fingers into her vagina. Petitioner threatened to kill her mother if she told anybody. Autumn told no one until she was taken to the police. Petitioner confessed to some of the conduct Autumn described as occurring at the shop and at Disneyland. In 2006, appellant was convicted of two counts of lewd and lascivious acts with a child under fourteen (§ 288(a)) and one count of using a minor for sex acts (§ 311.4(c)). At the trial for his conduct against Doe, appellant stipulated to those convictions.

Hailee G. was twenty-six years old at the time of Petitioner's trial. In 2006, Petitioner was an adult, and she was around ten years old. Hailee's family moved in with Petitioner for about a year. Petitioner would take her shopping and buy her whatever she wanted. But eventually Petitioner started doing things she did not like. At first, he sat next to her and put his arm around her. Then, he would have her sit on his lap and touch her by the waist. The conduct progressed to touching her under her clothes but over her underwear. Ultimately, Petitioner started touching Hailee's vagina and inserting his finger inside it. She would "tell him no," but Petitioner would try to hold her. Initially, Hailee did not tell anyone about Petitioner's acts because she thought they were friends. Later, she told her stepmother, and the police were contacted.

Kasey N., Hailee's sister, was twenty-two years old at the time of trial. Kasey was six years old in 2006. Petitioner would give her extra sweets and would touch her inappropriately when they were alone together. Over three times, Petitioner put his hand down her pants and rubbed her vagina with his fingers. Kasey testified that in order to keep her quiet, Petitioner would pretend he was someone else, a person who lived in the home and whom Kasey loved. She kept quiet for a while but ultimately told her mother and the police about the abuse. Neither Kasey's nor Hailee's claims resulted in convictions.

**F. CSAAS**

Dr. Anthony Urquiza testified as an expert on CSAAS. Dr. Urquiza explained CSAAS is neither a diagnosis nor a mental health disorder. He also testified CSAAS is not and should not be used to identify abused victims. Instead, it is a description of common behaviors of a sexually abused child.

Dr. Urquiza did not interview Jane Doe, nor did he read the police reports in her case.

**STANDARD OF REVIEW**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d) ("§ 2254(d)" or "section 2254(d)") constitutes a "threshold restriction," *Renico v. Lett*, 559 U.S. 766, 773 n.1 (2010), on federal habeas corpus relief that "bars relitigation of any claim 'adjudicated on the merits' in state court" subject to two narrow exceptions, *Harrington v. Richter*, 562 U.S. 86, 98 (2011). These exceptions require a petitioner to show that the state court's previous adjudication of the claim either (1) was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" or (2) was "'based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding.'" *Id*. at 97-98 (quoting § 2254(d)).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Accordingly, to overcome the bar of § 2254(d), a petitioner is required to show at the threshold that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see*

*also Johnson v. Williams*, 568 U.S. 289, 292, 298 (2013) (standard set forth in § 2254(d) is "difficult to meet" and "sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was 'adjudicated on the merits in State court proceedings'").

Here, to the extent the AEDPA's deference standard applies to Petitioner's claims, the relevant decision is the California Court of Appeal's reasoned direct-appeal opinion, even though that decision was followed by the California Supreme Court's denial of discretionary review. *See Berghuis v. Thompkins*, 560 U.S. 370, 378-80 (2010) (where intermediate state appellate court denies claim on merits and state supreme court then denies discretionary review, "relevant state-court decision" for purposes of § 2254(d) is that of intermediate state appellate court); *see also Camper v. Workers' Comp. Appeals Bd.*, 3 Cal. 4th 679, 689 n.8 (1992) (California Supreme Court's denial of discretionary review is not a decision on the merits).

First, as to Ground One, Petitioner contends that the California Court of Appeal "overlooked" the federal component of his claim such that review is de novo. (FAP at 46; *see also* LD 1 at 11-13.) He states that he presented the CSAAS and jury instruction claims to the Court of Appeal and the California Supreme Court[6] as violations of the Sixth and Fourteenth Amendments, in the headings and the body of the argument (*id.*, citing LD 2 at 42 & 50-51, LD 3 at 9, 20-32),[7] but the California Court of Appeal cited state cases when it rejected his claims and "cited no federal case, mentioned no federal constitutional provision, and used none of the vocabulary of due process. (FAP at 46 (citing LD 1 at 11-13).) The Supreme

[6] The issue of how Petitioner presented this claim to the California Supreme Court is irrelevant to the question of whether the AEDPA's deference standard applies in this case because, as noted, the California Supreme Court's denial of discretionary review is not a decision on the merits, which of course is needed for AEDPA deference. As noted above, the AEDPA sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner whose claim was "adjudicated on the merits in State court proceedings." § 2254(d).

[7] Petitioner actually cites LD 2 at pages 2-3 and 42-53, but it appears he intended to cite pages 42 and 50-51, where he cited the Sixth and Fourteenth Amendments in connection with his arguments regarding the CSAAS testimony and CALCRIM No. 1193.

Court has held that there is a rebuttable presumption under such circumstances that the state court rejected the federal component of the claim even if it was not expressly discussed. *Johnson v. Williams*, 568 U.S. at 301; *see also Patsalis v. Shinn*, 4 F.4th 1092, 1098 (9th Cir. 2023) ("When a petitioner presents a federal claim 'to a state court and the state court has denied relief,' we presume that 'the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.'") (quoting *Harrington v. Richter*, 562 U.S. at 99). It is hardly surprising that the California Court of Appeal found it unnecessary to cite federal law in connection with this claim as the federal authorities cited in support of the arguments now set forth in Ground One consisted of two passing citations to the Sixth and Fourteenth Amendments in subheadings in Petitioner's opening brief (*see* LD 2 at 42, 50) and citations to *Sullivan v. Louisiana*, 508 U.S. 275 (1993) and *Yates v. Evatt*, 500 U.S. 391 (1991) in support of the proposition that CALCRIM No. 1193 violated his Sixth Amendment right to a jury trial and the Fourteenth Amendment's Due Process Clause because they relieved the prosecution of its burden to prove every element beyond a reasonable doubt. (LD 2 at 50-51.)[8] This is especially so given that under California law a state court's rejection of a claim that is essentially based on state law implicitly rejects any accompanying constitutional claim that merely provides a "gloss" on the claim, and in such a circumstance "no separate constitutional discussion is required." *People v. Boyer*, 38 Cal. 4th 412, 441 n.17 (2006).

[8] Petitioner also cited a decision from the Second Circuit Court of Appeals, *Gersten v. Senkowski*, 426 F.3d 588, 600-01 (2d Cir. 2005), parenthetically noting that in that case an expert testified that CSAAS "has no validity and is not regularly accepted in the scientific community." (LD 2 at 47.) While it is true that an expert submitted a post-trial affidavit to this effect, it was not tested by cross-examination as the expert did not testify at trial and was unavailable to testify at the federal evidentiary hearing. *See Gersten v. Senkowski*, 426 F.3d at 603, 608. In any event, this point would appear to be irrelevant to the now-discarded argument Petitioner advanced in state court regarding the acceptance of CSAAS testimony in the scientific community, as will be discussed below. *See infra*, n.11.

Here, the evidence does not lead "very clearly" to the conclusion that the state court inadvertently overlooked Petitioner's CSAAS claims in his opening state court appellate brief so as to permit de novo review as to Ground One. *Cf. Murdaugh v. Ryan*, 724 F.3d 1104, 1121-22 (9th Cir. 2013) (applying de novo review of federal habeas claim where "'the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court,'" especially "in light of the state post-conviction court's otherwise careful consideration and evaluation of every other claim in [the state habeas] petition" (quoting *Johnson v. Williams*, 568 U.S. at 303)). Thus, the question is whether any reasonable theory could have supported the state court decision as to Ground One. *See Bemore v. Chappell*, 788 F.3d 1151, 1161 (9th Cir. 2015).

Next, as to Ground Two, the California Court of Appeal found that the prosecutor erred in his summation, a point the People conceded on appeal and Respondent does not dispute now. However, AEDPA deference is owed to the court's prejudice determination, as it expressly found that there was no prejudice under either the state or federal standard. (*See* LD 1 at 9-10.)

Finally, as to Ground Three, Petitioner does not contest that the AEDPA governs the review of this claim. (*See* FAP at 36-38, 65-68.) The same analysis discussed above with respect to the review of Ground One applies to Ground Three. Even though the California Court of Appeal did not cite any federal cases when it discussed this claim (*see* LD 1 at 7-9), the court is presumed to have rejected the federal component of the claim even if it was not expressly discussed, and Petitioner has failed to demonstrate that it overlooked the federal aspect of this claim. *See Johnson v. Williams*, 568 U.S. at 301; *Patsalis v. Shinn*, 4 F.4th at 1098; *People v. Boyer*, 38 Cal. 4th at 441 n.17.

## ARGUMENT

### I. GROUND ONE DOES NOT PRESENT A FEDERAL CONSTITUTIONAL CLAIM, AND IN ANY EVENT THE AEDPA PRECLUDES THE RELITIGATION OF GROUND ONE AS THE CSAAS TESTIMONY WAS PROPERLY ADMITTED AND THE USE OF CALCRIM NO. 1193 DID NOT VIOLATE PETITIONER'S SIXTH AMENDMENT RIGHTS

Petitioner asserts in Ground One that the CSAAS testimony and CALCRIM No. 1193, as applied, rendered his trial fundamentally unfair. (FAP at 32-34, 44-60.)[9] This claim presents only a state law issue and is thus not cognizable in this proceeding, but in any event the AEDPA preludes the relitigation of this claim. To the extent there was federal constitutional error, it did not prejudice Petitioner.

#### A. The Applicable Law

A federal court may entertain an application for a writ of habeas corpus by a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Violations of state law are not cognizable in a federal habeas corpus petition. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The Supreme Court has "long recognized that a mere error of state law is not a denial of due process." *Swarthout v. Cooke*, 562 U.S. at 222 (citations and internal quotation marks omitted). A state evidentiary ruling does not give rise to a cognizable federal habeas claim unless the ruling violated a petitioner's due process right to a fair trial. *Estelle v. McGuire*, 502 U.S. at 70. "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005), *as amended*, 421 F.3d 1154 (9th Cir. 2005). The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief on the ground that unduly

[9] The FAP includes a section which discusses why Petitioner believes that each of the alleged errors was prejudicial under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). (FAP at 68-72.) Respondent will address the issue of prejudice in his response to each of the three claims for relief.

prejudicial evidence has been introduced only when it renders the trial fundamentally unfair. *Andrew v. White*, 604 U.S. 86, 96 (2025) (per curiam); *Payne* v. *Tennessee*, 501 U.S. 808, 825 (1991).[10]

Under the AEDPA, the question now is whether a fair minded jurist reviewing the state court record could disagree with the petitioner that a trial court's mistaken admission of evidence was so "unduly prejudicial" as to render his trial "fundamentally unfair." *Payne v. Tennessee*, 501 U.S. at 825. In conducting this analysis, reviewing courts may consider the relevance of the disputed evidence to the charges, the degree of prejudice a defendant suffered from its introduction, and whether the trial court provided any mitigating jury instructions. *Andrew v. White*, 604 U.S. at 96; *see also Romano v. Oklahoma*, 512 U.S. 1, 13 (1994). The ultimate question is whether a fairminded jurist could disagree that the evidence "so infected the trial with unfairness" as to render the resulting conviction "a denial of due process." *Andrew v. White*, 604 U.S. at 96.

**B. The California Court of Appeal's Denial of Relief**

As relevant to Petitioner's current assertions regarding the CSAAS testimony and CALCRIM No. 1193,[11] the California Court of Appeal held as follows:

> [Petitioner] posits the trial court should have excluded the CSAAS evidence because it improperly bolstered Jane Doe's credibility and allowed the jury to consider it as evidence of guilt. [Petitioner] maintains CALCRIM No. 1193[12] did not cure this error but misstated the law.

---

[10] In the FAP, Petitioner predicts that Respondent would rely on *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), in support of the contention that the Supreme Court had "not yet made a clear ruling" that the admission of prejudicial evidence can violate due process. (FAP at 45.) His prediction was incorrect.

[11] Petitioner has abandoned one of the main arguments he made in his state court appeal with respect to the CSAAS evidence, which was that it should have been subject to *Kelly/Frye* scientific reliability standards. *See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); *People v. Kelly*, 17 Cal. 3d 24 (1976). (*See* LD 2 at 46-49.)

[12] The jury was instructed using CALCRIM No. 1193: "You have heard testimony from Dr. Anthony Urquiza regarding child sexual abuse accommodation (continued…)

We rejected a similar challenge in *People v. Gonzales* (2017) 16 Cal.App.5th 494 (*Gonzales*). In *Gonzales*, as here, the CSAAS expert testified that CSAAS is not a tool to help diagnose child sexual abuse. We concluded "[t]he CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior." "Thus, under CALCRIM No. 1193, a juror who believes [Dr. Urquiza's] testimony will find both that [Doe's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction."

[Petitioner] takes issue with the instruction's use of "'not inconsistent,'" contending "not inconsistent" is the same as "consistent." Even if true,[13] the instruction provides CSAAS evidence is to be considered "in deciding *whether or not* [Doe's] conduct was not inconsistent with the conduct of someone who has been molested . . . ." (italics added.) As we explained in *Gonzales*: "A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [Dr. Urquiza's] testimony to conclude that [Doe's] behavior does not mean she lied when she said she was abused." CSAAS evidence and the attendant instruction serve to "disabuse jurors of commonly held misconceptions of child sexual abuse . . . ." Addressing those misconceptions "neutralizes the victim's apparently self-impeaching behavior," leaving the parties free to argue and the jury to determine what

syndrome. [¶] Dr. Urquiza's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him or any conduct or crimes with which he was not charged. [¶] You may consider this evidence only in deciding whether or not [Jane Doe's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

[13] CALCRIM No. 1193 was modified in September 2022, and this part of the instruction now states: "You may consider this evidence only in deciding whether or not [the alleged victim's] conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of the alleged victim."

> the conduct may mean, including that the behavior, such as delay in reporting, could be indicative of falsehood.
>
> We conclude the trial court properly admitted and instructed on the CSAAS evidence.

(LD 1 at 11-13 (citations omitted, footnotes in original but renumbered here).)

### C. This Claim Is Not Cognizable

As a threshold matter, this claim must be denied because questions pertaining to the admission of CSAAS evidence and CALCRIM No. 1193 merely allege state law errors which do not implicate the federal Constitution. *See Langford v. Day*, 110 F.3d 1386, 1388-89 (9th Cir. 1996) (a federal habeas corpus petitioner may not transform a state-law claim into a federal claim merely by asserting a violation of due process); *see also Park v. California*, 202 F.3d 1146, 1154 (9th Cir. 2000) (even though a federal habeas petitioner cited the Fifth, Ninth, and Fourteenth Amendments, his claim regarding the admission at trial of information contained in jailhouse tapes held not cognizable on habeas where petitioner's arguments related to state law standards regarding the admission of evidence).

Moreover, federal habeas courts may not revisit the state appellate court's interpretation of California law, which is binding on federal habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); *Estelle v. McGuire*, 502 U.S. at 67-68 ( ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) ("A state court has the last word on the interpretation of state law.").

Here, despite Petitioner's assertion that the admission of the CSAAS evidence and the use of CALCRIM 1193 in this case constituted violations of his jury trial and due process rights (*see* FAP at 32-34, 44-45, 48-60), they are in truth

allegations of error under state law only. *See Lacy v. Lewis*, 123 F. Supp. 2d 533, 551 (C.D. Cal. 2000) ("Merely adding the phrase 'due process' to state law claims does not transform those claims into federal claims; rather, they remain state law claims 'dressed up' as federal due process claims."). As such, Ground One is not cognizable in this proceeding.

**D. There Is No Clearly Established Federal Law on This Point**

Even if this claim were considered to present a federal constitutional question, the lack of clearly established federal law also dooms this claim under the AEDPA. "Clearly established federal law" under AEDPA is limited to Supreme Court authority that "squarely addresses" the claim and provides a "clear answer." *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008); *see also Premo v. Moore*, 562 U.S. 115, 127-28 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 121-22 (2009); *Carey v. Musladin*, 549 U.S. 70, 77 (2006). Where "[t]he Supreme Court has not squarely addressed [a] claim or articulated a rule that clearly extends to the present case[,]" the state court decision "cannot be said to have unreasonably applied clearly established federal law under AEDPA." *Varghese v. Uribe*, 736 F.3d 817, 829 (9th Cir. 2013).

Moreover, "[§] 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *accord Metrish v. Lancaster*, 569 U.S. 351, 367 (2013); *see also Greene v. Fisher*, 565 U.S. 34, 38 (2011) (§ 2254(d)(1) requires "focus on what a state court knew and did, and to measure state-court decisions against this Court's precedents *as of the time the state court renders its decision*" (emphasis in original) (internal quotation marks and brackets omitted)).

And, federal circuit precedent may not "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the

Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013). A federal appellate court "may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct." *Id.*; *see also Lopez v. Smith*, 574 U.S. 1, 5-6 (2014) (per curiam) (reversing grant of habeas relief where federal court relied heavily on a circuit decision and cited Supreme Court cases that never addressed the specific question at issue).

Here, the portion of Ground One pertaining to the admission of the CSAAS testimony must be rejected due to the absence of controlling Supreme Court precedent compelling federal habeas relief on the ground that the admission of CSAAS evidence violates a defendant's due process rights. *See Higgins III v. Kernan*, 2020 WL 6385810, at *10 (C.D. Cal. Sept. 11, 2020) (no Supreme Court precedent precludes the admission of CSAAS testimony); *Noble v. Adams*, 2020 WL 4001479, at *10 (N.D. Cal. July 15, 2020) (there is no Supreme Court authority concluding that the admission of CSAAS evidence violates due process); *Mendez v. Paramo*, 2019 WL 8643747, at *6 (C.D. Cal. Dec. 31, 2019) (there is no clearly established Supreme Court precedent that admission of CSAAS or similar evidence violates due process); *see also Amaya v. Frauenheim*, 823 F. App'x 503, 505 (9th Cir. 2020) (admission of CSAAS evidence did not violate defendant's federal due process rights).

The Supreme Court's decision in *Andrew v. White*, 604 U.S. 86, did not clearly establish any principle of law that governs Petitioner's claim in this case. In that case, and *Payne* v. *Tennessee*, 501 U.S. 808, which the Court relied upon heavily, the Court merely held that the Due Process Clause provides a mechanism for relief on the ground that unduly prejudicial evidence has been introduced and when it renders the trial fundamentally unfair. *See Andrew v. White*, 604 U.S. at 88; *Payne* v. *Tennessee*, 501 U.S. at 825. Here, Petitioner's theory is not that the CSAAS evidence was unduly prejudicial, but rather that it operated as "proof of the

guilt on the only contested issue," which was Doe's credibility. (*See* FAP at 48-54.)

The same is true regarding the portion of Ground One that challenges CALCRIM No. 1193 on the grounds that it is contradictory, supplies an innocent explanation for the victim's delay in reporting, denials, and recantations while saying nothing about the competing inference that the same conduct evidences fabrication, and contains a "double negative." (FAP at 51-53.) Claims of error regarding state jury instructions are generally matters of state law only. *See Gilmore v. Taylor*, 508 U.S. 333, 344 (1993); *see also Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). "The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief." *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (as amended). Rather, habeas relief is available only when a petitioner demonstrates that "[an] ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. at 72. The use of CALCRIM No. 1193 in this case, even if it were somehow defective, did not render Petitioner's trial fundamentally unfair or infringe on any of Petitioner's constitutional rights.

As there is no clearly established federal law on these points, the state court of appeal's rejection of this claim could not have been contrary to, or an unreasonable application of, clearly established federal law under the AEDPA.

**E. This Claim Fails in Any Event, As CSAAS Evidence Does Not Conclusively Prove Any Fact, And Certainly Does Not Show That A Specific Victim Of Sexual Abuse Is Credible**

In any event, this claim fails irrespective of the lack of clearly established federal law on this point. The California Supreme Court has repeatedly approved the admission of CSAAS testimony in child molestation cases. *See People v. McAlpin*, 53 Cal. 3d 1289, 1300-01 (1991) (while expert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused, it is admissible to rehabilitate

such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation, and the "great majority of courts approve such expert rebuttal testimony"); *see also People v. Brown*, 33 Cal. 4th 892, 906 (2004) (applying *McAlpin* to find that expert testimony may be presented on common behaviors of victims of domestic violence).

Over the last three decades, California courts have routinely followed *McAlpin* and *Brown* in accepting the use of CSAAS testimony in child molestation cases. *See*, *e.g.*, *People v. Lapenias*, 67 Cal. App. 5th 162, 172 (2021); *People v. Munch*, 52 Cal. App. 5th 464, 468, 472-73 (2020) (citing California cases that "have long recognized the well-established relevance, necessity, reliability, and importance of this evidence"); *People v. Wilson*, 33 Cal. App. 5th 559 (2019); *People v. Julian*, 34 Cal. App. 5th 878 (2019); *People v. Mateo*, 243 Cal. App. 4th 1063, 1072-73 (2016) (battered women's syndrome is analogous to CSAAS as both syndromes explain that victims' seemingly self-impeaching behaviors—e.g., delayed disclosure, returning to the home—are consistent with their claims of having been beaten, raped, or sexually molested); *People v. Patino*, 2 Cal. App. 4th 1737 (1994). CSAAS testimony may be presented in the prosecution's case-in-chief, rather than on rebuttal. *See*, *e.g.*, *People v. Patino*, 26 Cal. App. 4th at 1744-45, 1747 (noting that CSAAS testimony may be presented even if the prosecutor has not identified a specific basis for the testimony, so long as the victim's credibility is placed in issue by his or her seemingly paradoxical behavior, and furthermore observing that "the United States Supreme Court has held the admission of relevant evidence of the battered child syndrome does not violate the due process clause of the Fourteenth Amendment," and that "[b]attered child syndrome evidence is analogous to CSAAS evidence").

Many federal courts, including the Ninth Circuit Court of Appeals, have similarly approved CSAAS testimony against a variety of challenges. *See Brodit v.*

*Cambra*, 350 F.3d 985, 991 (9th Cir. 2003) (noting it had held that CSAAS testimony is admissible in federal child-sexual-abuse trials, when the testimony concerned general characteristics of victims and was not used to opine that a specific child was telling the truth, citing *United States v. Bighead*, 128 F.3d 1329 (9th Cir. 1997) (per curiam)); *United States v. Antone*, 981 F.2d 1059, 1062 (9th Cir. 1992) (this type of general testimony "merely assist [s] the trier of fact in understanding the evidence; it [does] not improperly bolster the particular testimony of the child victim"); *see also Amaya* v. *Frauenheim*, 823 F. App'x at 505 (admission of CSAAS evidence did not violate defendant's federal due process rights in part because the evidence complied with *Brodit*);[14] *Mendez v. Paramo*, 2019 WL 8643747, at *6 (rejecting petitioner's challenge to the admission of CSAAS evidence because, in addition to lack of clearly established Supreme Court precedent that admission of CSAAS evidence violates due process, the evidence complied with *Brodit*).

In contrast to the numerous courts which have upheld criminal convictions in which CSAAS testimony was adduced, Petitioner fails to cite a single state or federal case which found the admission of such evidence to constitute prejudicial error. (*See* FAP at 32-34, 44-60.) Instead, he attempts to distinguish a handful of the many cases which have upheld such testimony and relies on the views of commentators, which of course does not constitute clearly established federal law. (*See* FAP at 54-59.)

Notably, Petitioner has failed to demonstrate that the CSAAS evidence adduced in this case was of such a character as to render his trial fundamentally unfair. It is difficult to credit Petitioner's assertion that the evidence operated as "proof of guilt" on the only contested issue, which was whether Jane Doe was credible when she described the molestations. (*See* FAP at 48-49.) The CSAAS

[14] Petitioner correctly notes that *Amaya* is unpublished. (FAP at 55.) The decision, filed in 2020, is citable, though not binding. *See* Fed. R. App. P. 32.1(a); 9th Cir. R. 36-3.

testimony did not "prove" anything. After all, Dr. Urquiza explained that CSAAS is not and should not be used to identify abused victims and instead is a description of common behaviors of a sexually abused child (LD 6 at 715-16, 730), and he stated that he did not interview Doe or read the police reports in her case (LD 6 at 730). As the California Court of Appeal aptly put it, CSAAS evidence "simply neutralizes the victim's apparently self- impeaching behavior"—which Petitioner describes in the FAP (*see* FAP at 49)—and thus a juror who believed Dr. Urquiza's testimony would find both that Doe's apparently self-impeaching behavior did not affect her believability one way or the other and that the CSAAS evidence did not show she had been molested. (LD 1 at 11-12.) It therefore complied with the requirements set forth in *Brodit*. *See Brodit v. Cambra*, 350 F.3d at 991.

Dr. Urquiza's testimony had a high degree of probative value on the narrow issue of whether Doe's actions were inconsistent with how victims of sexual abuse may behave. As California cases have repeatedly explained, expert testimony on the common reactions of victims of child sex abuse is useful to disabuse jurors of commonly held misconceptions on this subject. *See People v. McAlpin*, 53 Cal.3d at 1300-01 & n.4; *People v. Bowker*, 203 Cal. App. 3d 385, 392 (1988) ("expert reference to CSAAS" is prohibited "for the purpose of demonstrating abuse," but can be used "for the limited purpose of disabusing the jury of misconceptions as to how child victims react to abuse"). The jury in this case was also entitled to use the evidence to assess Doe's credibility, which was subject to being questioned based on her behavior and testimony, for example her initial denial that she had been molested when Detective Yates interviewed her, as well as her apparent lack of any efforts to avoid spending time with Petitioner after the abuse began. The CSAAS evidence helped the jury understand that behavior, and it therefore possessed significant probative value.

This case is nothing like *Andrew v. White*, 604 U.S. 86, or *Payne v. Tennessee*, 501 U.S. 808, two death penalty cases Petitioner cites in support of his assertion

that the admission of the CSAAS testimony violated his federal due process rights. (*See* FAP at 42, 44-45.) In *Payne*, the Supreme Court reconsidered its holdings that the Eighth Amendment bars the admission of victim impact evidence during the penalty phase of a capital trial. The Court noted that, in many circumstances, "victim impact evidence serves entirely legitimate purposes," even though in others it could be prejudicial, and then concluded that a categorical bar was not necessary to protect against the risk of prejudicial testimony because "the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief" against the introduction of evidence "that is so unduly prejudicial that it renders the trial fundamentally unfair." *Payne v. Tennessee*, 501 U.S. at 825. In other words, the Court removed one protection for capital defendants (the per se bar on victim impact statements) in part because another protection (the Due Process Clause) remained available against evidence that is so unduly prejudicial that it renders the trial fundamentally unfair. However, the Court did not reach any specific holding about evidence that was introduced at Payne's penalty trial, much less hold that it should have been excluded as unduly prejudicial.

Thirty-four years after *Payne* was decided, the Supreme Court stated in *Andrew* that the legal principle on which the defendant in that case relied, that the Due Process Clause can in certain cases protect against the introduction of unduly prejudicial evidence at a criminal trial, was indispensable to the decision in *Payne*. The *Andrew* Court concluded that the *Payne* Court's conclusion was a holding of this Court for purposes of AEDPA, and established that the introduction of unduly prejudicial evidence could, in certain cases, violate the Due Process Clause. *Andrew v. White*, 604 U.S. at 92.

In *Andrew*, a capital prosecution of a woman for murdering her husband, the State spent significant time at trial introducing evidence about the defendant's sex life and about her failings as a mother and wife. The prosecution later conceded that much of the evidence was irrelevant, including testimony about her sexual

partners reaching back two decades; the outfits she wore to dinner or during trips to the grocery store, the underwear she packed for vacation; and how often she had sex in her car. At least two of the prosecution's guilt-phase witnesses took the stand exclusively to testify about the defendant's provocative clothing, and others were asked to comment on whether a good mother would dress or behave the way the defendant had. In its closing statement, the prosecution again invoked these themes, including by displaying the defendant's thong underwear to the jury, by reminding the jury of the defendant's alleged affairs during college, and by emphasizing that she "had sex on [her husband] over and over and over" while "keeping a boyfriend on the side." *Andrew v. White*, 604 U.S. at 88-89. Here, in sharp contrast to *Andrew*, in which CSAAS evidence was not offered and would not have been relevant, the People have never conceded that the CSAAS testimony was irrelevant. Moreover, that testimony was in no way salacious and shocking as was the evidence at issue in the *Andrew* case. It was expert testimony which the jury was free to reject if it chose to do so. To the extent this claim is cognizable, the AEDPA precludes its relitigation in this proceeding.

Further, the claim would fail even under de novo review. Prior to the enactment of the AEDPA, the Ninth Circuit held that the improper admission of evidence can violate due process only if there are *no* permissible inferences the jury may draw from it, and even then its admission must necessarily prevent a fair trial. *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). Petitioner cannot make that showing here. There were permissible inferences the jury could have drawn from the CSAAS testimony regarding why Doe did not report the abuse earlier and denied it had taken place when her mother questioned her about whether she had been molested, even if they did not conclusively prove any fact at issue in the case against appellant.

### F. The Use of CALCRIM No. 1193 In Petitioner's Trial Did Not Violate His Sixth Amendment Rights

To the extent that the use of CALCRIM No. 1193 is considered to present a federal constitutional claim, Petitioner fails to show that its use violated his due process rights. As noted above, habeas relief due a faulty jury instruction is available only when a petitioner demonstrates that "[an] ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. at 72. An allegedly erroneous instruction is not judged "in artificial isolation," but rather is considered in the context of the trial record and the instructions as a whole. *Id.*; *see also Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). The relevant inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner. *Houston v. Roe*, 177 F.3d 901, 909 (9th Cir. 1999).

Even though the instruction may have some "ambiguity, inconsistency, or deficiency," such an error does not necessarily amount to a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009); *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). In evaluating instructions, courts "do not engage in a technical parsing of th[e] language of the instructions, but instead approach the instructions in the same way that the jury would—with a commonsense understanding of the instructions in the light of all that has taken place at the trial." *Johnson v. Texas*, 509 U.S. 350, 368 (1993).

The gist of Petitioner's argument concerning the use of CALCRIM No. 1193 as applied in this case is that it: (1) was "contradictory" in that one portion of the instruction says the CSAAS testimony was not evidence that he committed the charged crimes while another authorizes its use to evaluate the believability of the one witness whose testimony was the proof of those crimes (*see* FAP at 51); (2) "runs one way" because it supplies an innocent explanation for delay in reporting, denial, and recantation and says nothing of the competing inference that the same

conduct evidences fabrication (*id*. at 52); and (3) contains a double negative in that the phrase "not inconsistent with" means consistent with, and using the expert's framework to decide whether Doe's conduct was consistent with that of a molested child is a diagnosis by "another name;" moreover the phrase "not inconsistent with" was removed from the pattern instruction by the California Judicial Council in September 2022, after California appellate courts had described it as potentially misleading (*id*.).

However, numerous federal courts have upheld CALCRIM No. 1193. *See Matias v. Gipson*, 2015 WL 5935324, at *17 (N.D. Cal. Oct. 13, 2015) (rejecting petitioner's claim that the trial court erred by instructing with CALCRIM No. 1193); *Rodriguez v. Spearman*, 2014 WL 2465945, at *12 (E.D. Cal. May 29, 2014) (rejecting petitioner's claim that the trial court's erroneous giving of CALCRIM No. 1193 violated his due process rights); *Barkley v. Beard*, 2014 WL 991094, at *7-*8 (N.D. Cal. Mar. 11, 2014) (rejecting petitioner's claim that CALCRIM No. 1193 violated his due process rights by allowing the jury to use CSAAS evidence to evaluate the victim's credibility).

As to Petitioner's assertion that CALCRIM No. 1193 as applied in this case is "contradictory" in that one portion of the instruction says the CSAAS testimony was not evidence that he committed the charged crimes while another authorizes its use to evaluate the believability of the one witness whose testimony was the proof of those crimes (*see* FAP at 51), the California Court of Appeal correctly rejected this argument. The court noted that Dr. Urquiza testified that CSAAS is not a tool to help diagnose child sexual abuse and simply neutralizes the victim's apparently self-impeaching behavior such that under CALCRIM No. 1193 a juror who believes that testimony will find *both* that Doe's apparently self-impeaching behavior does not affect her believability one way or the other, *and* that the CSAAS evidence does not show she had been molested. (LD 1 at 11-12.)

Although Petitioner also criticizes the instruction as being one-sided because it supplies an innocent explanation for delay in reporting, denial, and recantation and says nothing of the competing inference that the same conduct evidences fabrication (FAP at 52), it would seem fairly obvious that when an alleged victim of child abuse delays reporting abuse, or denies that it took place at all, or recants a prior allegation, any reasonable juror would not need to be instructed that these actions tend to point to fabrication. Here, counsel certainly could have—but did not—request that CALCRIM No. 1193 be modified to include language about possible fabrication in the trial court. (*See* LD 6 at 1664-75 [conference held in the trial court concerning proposed jury instructions].) The California Court of Appeal pointed out that the parties were free to argue that behavior such as delay in reporting could be indicative of falsehood. (LD 1 at 12-13.)

And, regarding Petitioner's contention that the instruction's use of "'not inconsistent'" is faulty because "not inconsistent" is the same as "consistent," the California Court of Appeal aptly pointed out that, even if this were true, the instruction provides CSAAS evidence is to be considered "in deciding *whether or not* [Doe's] conduct was not inconsistent with the conduct of someone who has been molested." The court also noted that a reasonable juror would understand CALCRIM No. 1193 to mean that the jury could use Dr. Urquiza's testimony to conclude that Doe's behavior does not mean she lied when she said she was abused. (LD 1 at 12.)

### G. Any Evidentiary or Instructional Error Did Not Prejudice Petitioner

In any event, any error caused by either the CSAAS evidence or the use of CALCRIM No. 1193 did not result in prejudice to Petitioner. In a collateral proceeding such as this one, the test for whether a federal constitutional error was harmless which generally is utilized asks whether the alleged error resulted in "actual prejudice," that is, whether it had a substantial and injurious effect or

influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. at 637-38; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (even if state court does not have occasion to apply the test for assessing prejudice applicable under federal law, the *Brecht* standard applies uniformly in all federal habeas corpus cases under § 2254).

Under this standard, there must be more than a "reasonable possibility" that the error was harmful. *See Davis v. Ayala*, 576 U.S. 257, 268 (2015); *see also Brecht v. Abrahamson*, 507 U.S. at 637. A petitioner must show there is "a reasonable probability" that the jury would have reached a different result but for the alleged error. *Clark v. Brown*, 450 F.3d at 916; *Henry v. Estelle*, 33 F.3d 1037, 1041 (9th Cir. 1993) (*Brecht* harmless error standard applies to constitutional magnitude, trial type errors, and is the equivalent of harmless error standard under California law), *rev'd on other grounds sub nom. Duncan v. Henry*, 513 U.S. 364, 366 (1995).

Review for harmless error under *Brecht* is "more forgiving" to state court errors than the harmless error standard the Supreme Court applies on its direct review of state court convictions. *Larson v. Palmateer*, 515 F.3d 1057, 1064 (9th Cir. 2008). The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by the trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).

Here, the CSAAS evidence did not consume a significant amount of time, as only one witness testified regarding this subject.[15] The testimony did not confuse the issues or mislead the jury, as Dr. Urquiza testified that the evidence was not to be used as a diagnostic tool to determine whether abuse had actually occurred. That

[15] Dr. Urquiza's testimony took about one hour and seven minutes. (*See* LD 5 at 448 [testimony began at 10:07 a.m. on September 20, 2022]; LD 5 at 449 [testimony concluded and witness was excused at 11:14 a.m. the same day].)

point was underscored by the trial court's instruction not to use his testimony to infer that abuse had occurred. (LD 5 at 585; LD 6 at 1718-19.) The jurors are presumed to have followed that instruction. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Moreover, the prosecution's case was quite strong. Doe's compelling and detailed trial testimony was largely consistent with her prior statements. The section 1108 witnesses lent credence to her testimony, and so did the incriminating photographs recovered from Petitioner's iPad. Any delay on Jane Doe's part in coming forward and initial denials that Petitioner had molested her was explained by the fact that Petitioner told Doe that her mother would hate Doe if she told her mother what Petitionre was doing. Thus, any error caused by admission of the CSAAS testimony did not have a substantial and injurious effect on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. at 637-38.

Even if CALCRIM No. 1193 were in some way defective, any instructional error was harmless in light of the other given jury instructions and the strong evidence of Petitioner's guilt of the instant crimes. *See Matias v. Gipson*, 2015 WL 5935324, at *17 (rejecting the petitioner's claim that CALCRIM No. 1193 had a substantial or injurious effect on the verdict). The jury was instructed that it, and it alone, was charged with deciding what the facts were based on the evidence (LD 5 at 567; LD 6 at 1707); to consider all of the instructions in light of the others, to not let bias, prejudice, or sympathy influence its deliberations, that some instructions might not apply, that giving an instruction did not imply anything about the facts (LD 5 at 567; LD 6 at 1707-08); and that Petitioner was presumed to be innocent unless the People proved his guilt beyond a reasonable doubt (LD 5 at 571; LD 6 at 1709). The court also instructed the jury to use their common sense and experience in weighing credibility (LD 5 at 575-76; LD 6 at 1712); that certain evidence was admitted for a limited purpose and the jury could consider such evidence only for that purpose (LD 5 at 581; LD 6 at 1716); and on how to evaluate expert testimony

(LD 5 at 584; LD 6 at 1718). As noted above, the jury is presumed to follow its instructions. *Weeks v. Angelone*, 528 U.S. at 234.

Petitioner states that that the jury "retired on Thursday afternoon, deliberated through Friday, stopped for a ninety seven minute read-back of Doe's entire testimony, recessed for the weekend, and did not convict until Monday afternoon," and notes that "lengthy deliberations suggest a "difficult case." (FAP at 69.)[16] He also notes that the jury's request for a readback of the complaining witness's testimony "suggest[s], at a minimum, that [her] credibility was a point of discussion and not easily resolved." (*Id.*) However, the jury's deliberations in this case were plainly not "lengthy." The handful of hours the jury spent deliberating did not suggest difficulty in finding Petitioner guilty in light of the number of witnesses who testified and the number of counts alleged against Petitioner. Having said that, lengthy deliberations, coupled with requests for the rereading of testimony and instructions, may also demonstrate that the jury exercised "diligence and care, not an unambiguous sign that it was a close case." *See Walker v. Martel*, 709 F.3d 925, 943 (9th Cir. 2013); *see id*. at 935-36 (reversing district court's grant of habeas relief, and finding that the state court could have reasonably inferred that the case was not close and that "the jury carefully considered each of the charges" when it deliberated for thirty-five hours over five days, requested readback of testimony of three witnesses, and requested rereading of instructions). Moreover, it is not surprising that the jury asked for a readback of Doe's testimony, as it was presumably "a point of discussion" given the importance of her testimony, but this

[16] The jury began its deliberations at 3:57 p.m. on Thursday, September 29, 2022 (LD 5 at 553), and recessed 37 minutes later, at 4:34 p.m. (LD 5 at 555). The jury resumed deliberations at 9:05 a.m. on Friday, September 30, 2022, and recessed at 4:02 p.m. that day. The jury took a twenty-minute morning break and a one hour and forty-five minute lunch break, and the readback of Doe's testimony took one hour and thirty-seven minutes. (LD 6 at 563.) The jury resumed deliberations at 9:07 a.m. on Monday, October 3, 2022, and reached verdicts at noon that day. (LD 5 at 627). In other words, the jury appears to have actually deliberated for a total of exactly seven hours and twelve minutes over a three-day period, excluding breaks and the court reporter's readback.

does not necessarily mean that the jury found her credibility difficult to resolve, as Petitioner now postulates. (*See* FAP at 69.)

Accordingly, Petitioner is not entitled to relief as to Ground One. Even if this claim were reviewed de novo, Petitioner has failed to show that his federal constitutional rights were violated with respect to the CSAAS testimony and CALCRIM No. 1193.

## II. Ground Two Is Procedurally Barred, And In Any Event Fails Under the AEDPA as the Prosecutor's Brief and Isolated Misstatement Concerning the Propensity Evidence Did Not Prejudice Petitioner

In Ground Two, Petitioner alleges that the prosecutor's misstatement of the section 1108 propensity evidence in closing arguments violated due process. (FAP at 34-36, 60-65.) Once again, the AEDPA preludes the relitigation of this claim.

### A. The Applicable Law

To warrant habeas relief, prosecutorial misconduct must have been so egregious as to have infected the entire trial fatally, rendering it fundamentally unfair and denying the petitioner due process.[17] *Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). The standard of review is the narrow one of due process, and not the broad exercise of supervisory power. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Ayala v. Chappell*, 829 F.3d 1081, 1114-15 (9th Cir. 2016) (for purposes of prosecutorial misconduct claims subject to AEDPA's deference standard, *Darden* creates a "general" standard, giving state courts "more leeway" to apply it); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Thus, relief may not be granted merely because the federal court might disapprove of the prosecutor's behavior. *See Sechrest v. Ignacio*, 549 F.3d 789, 807 (9th Cir. 2008).

---

[17] Prosecutorial error is a more apt description of Petitioner's claim in that no culpable state of mind for the prosecutor is required. *See People v. Centeno*, 60 Cal. 4th 659, 666-67 (2014); *see also* ABA House of Delegates, Resolution 100B (Aug. 9-10, 2010) (adopting resolution urging appellate courts to distinguish between prosecutorial "error" and "misconduct").

A constitutional violation arising from prosecutorial misconduct does not warrant habeas relief if the error is harmless under *Brecht*. *See Sandoval v. Calderon*, 241 F.3d 765, 778 (9th Cir. 2000); *see also Rowland v. Chappell*, 876 F.3d 1174, 1189 (9th Cir. 2017) ("any prosecutorial misconduct amounting to a constitutional violation was harmless because it did not have a 'substantial and injurious effect' on the jury's verdict"); *Fields v. Woodford*, 309 F.3d 1095, 1109 (9th Cir. 2002) ("If prosecutorial misconduct is established, and it was constitutional error, we then apply the *Brecht* harmless error test.").

**B. The California Court of Appeal's Denial of Relief**

The California Court of Appeal rejected the assertion of prosecutorial error regarding this statement, noting as follows:

> The prosecutor misstated the evidence in closing argument when he indicated that all the prior offenses involved oral copulation and photography.
>
> [Petitioner] did not object. The objection would not have been futile. We conclude the claim is forfeited.
>
> [Petitioner] argues defense counsel's failure to object constituted ineffective assistance of counsel. We are unpersuaded. "[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." Counsel might have believed objecting "would focus the jury's attention on the [prior conduct] in ways that would not be helpful to the defense."
>
> Regardless, the error was harmless under both federal and state constitutional standards. Under the federal standard the misstatement did not infect the trial with such "'unfairness as to make the resulting conviction a denial of due process . . . .'" Under the state standard, it was not "reasonably probable the trial outcome was affected." The prosecutor's circumscribed misstatement did not result in a denial of due

> process nor is it reasonably probable the outcome would have been different absent the error. The trial court instructed the jury that the attorney arguments are not evidence. (CALCRIM No. 222.) We presume the jury follows such instructions.
>
> [Petitioner] contends the misconduct improperly bolstered Doe's credibility by exaggerating the similarity between the prior and charged offenses. Although the prior and charged offenses differed in some respects, they all shared many similarities. Moreover, the prosecutor made no misstatement as to Autumn.
>
> Ultimately, Doe's detailed testimony was largely consistent with her prior statements. The Evidence Code section 1108 witnesses lend credence to her account, as do photographs recovered from [Petitioner]'s iPad. While the prosecutor slightly overstated the similarity between prior and charged offenses, we cannot find a reasonable probability of a
>
> (LD 1 at 9-10; citations omitted.)

**C. This Claim Is Procedurally Barred**

A federal court may not review a state prisoner's habeas claim if the claim was previously rejected by a state court on a state-law ground that is independent of the federal question and adequate to support it. *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). In other words, in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. at 750; *Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999); *Bonin v. Calderon*, 59 F.3d 815, 842-43 (9th Cir. 1995).

A habeas petitioner who has failed to meet the state's procedural requirements for presenting federal claims has deprived the state courts of an opportunity to address those claims in the first instance, just as a petitioner who has failed to exhaust state remedies has done. *Coleman v. Thompson*, 501 U.S. at 732; *see also Harris v. Reed*, 489 U.S. 255, 265-66 (1989) (state court must, however, clearly and expressly invoke the default by providing a "plain statement" of default). To qualify as an adequate procedural ground, capable of barring federal review, a state rule must be firmly established and regularly followed. *Johnson v. Lee*, 578 U.S. 605, 608 (2016) (per curiam).

A classic example of such a procedural bar defaulting federal consideration of an issue is failure to object at trial. *See Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977) (Supreme Court held that the failure to object at trial to the admission of an inculpatory statement precluded a federal court from entertaining in a habeas proceeding the claim that the statement was involuntary); *Rich v. Calderon*, 187 F.3d 1064, 1069-70 (9th Cir. 1999) (Ninth Circuit found it could not review certain prosecutorial claims because they were procedurally defaulted due to petitioner's failure to make contemporaneous objections, and the California court consequently invoked a procedural bar to their consideration, the validity of which petitioner failed to overcome); *see also Vansickel v. White*, 166 F.3d 953, 957 (9th Cir. 1999) (failure to object in the trial court to denial of defendant's statutory allotment of peremptory challenges procedurally barred claim); *Bonin v. Calderon*, 59 F.3d at 842-43 (procedural default found where California Supreme Court concluded that defendant had failed to properly raise any objection during trial); *see also Larrimore v. Scribner*, 365 F. App'x 858, 859 (9th Cir. 2010) (finding petitioner's Sixth Amendment confrontation claim was procedurally defaulted because, "[b]y stating only that he 'object[ed] for the record,' [petitioner] failed to raise a timely and specific objection as required by California law"). The failure to object is a

state procedural bar that is both independent and adequate, and is also consistently applied by California courts.

Here, the California Court of Appeal found that Petitioner's prosecutorial misconduct claim was forfeited because of his failure to object. (*See* LD 1 at 9.**)** This procedural bar precludes federal review in this case. *See Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004).

As Petitioner has failed to show cause and prejudice with respect to this procedural default—that is, he has not shown the existence of "some objective factor external to the defense" that impeded the defense's efforts to comply with the State's procedural rules requiring formal objections and the necessity of obtaining a ruling at the trial court level before raising a claim on appeal—this claim is defaulted. *See generally Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996); *see also McCleskey v. Zant*, 499 U.S. 467, 498 (1991) (cause is external impediment such as government interference or reasonable unavailability of claim's factual basis); *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).

**D. Petitioner Was Not Prejudiced in Any Event**

Leaving aside the issue of procedural bar, the California Court of Appeal reasonably found that while the prosecutor did in fact misstate the evidence the error was harmless under both federal and state constitutional standards. (LD 1 at 10.) The prosecutor's misstatement was brief, isolated, and limited in scope. (*See* LD 6 at 1742 [**"**All the prior offenses involve the same, like, 3,000-foot view similarities; prepubescent girls; there's grooming and manipulation; there's infatuation; and then there is vaginal touching, oral copulation, and photography."].) Most of the points applied to each of the victims, and it was only the latter two which should have been limited to Autumn. The trial court instructed the jury that the attorney arguments are not evidence. (LD 5 at 572; LD 6 at 1710.)

It must be presumed the jury followed this instruction. *Weeks v. Angelone*, 528 U.S. at 234.

Moreover, as noted previously, the prosecution's case was quite strong. While the prosecutor slightly overstated the similarity between prior and charged offenses, the California Court of Appeal reasonably found that the misstatement did not infect the trial with such unfairness as to make the resulting conviction a denial of due process, nor did it have a substantial and injurious effect on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. at 637-38; *Sandoval v. Calderon*, 241 F.3d at 778.

Petitioner disagrees, opining that no fairminded jurist could agree with the court's finding that the misstatement was circumscribed, and only slightly overstated the similarity between the prior and the charged offenses. (FAP at 62-63.) Respondent notes that the misstatement itself pertained exclusively to the prior offenses in that the prosecutor stated that all the *prior* offenses involved oral copulation and photography when only the prior offenses regarding Autumn did, and appellant contended the misconduct improperly bolstered Doe's credibility by exaggerating the similarity between the prior and charged offenses, a contention the state court of appeal rejected. (LD 1 at 10.) The court correctly found that although the prior and charged offenses differed in some respects, they all shared many similarities, and moreover the prosecutor made no misstatement as to Autumn. (*Id.*) Even if some fairminded jurist might conclude that this apparently inadvertent error on the prosecutor's part deprived Petitioner of a fair trial, it cannot be said that no fairminded jurist could reach the same conclusion as the three appellate justices who rejected this point in Petitioner's state court appeal. *See Harrington v. Richter*, 562 U.S. at 103.

Petitioner also relies on *Kipp v. Davis*, 971 F.3d 939, 952-55 (9th Cir. 2020), in which the Ninth Circuit granted habeas relief. Petitioner asserts that the court did so because the state court's finding of a highly distinctive pattern between prior and

charged offenses credited the similarities while misstating and ignoring the dissimilarities the record contained. He also cites *Marks v. Davis*, 106 F.4th 941, 950-51 (9th Cir. 2024), for the proposition that a state court's finding that plainly misstates the record on the material issue is unreasonable such that review of the claim is then de novo. (*See* FAP at 63.) However, *Kipp* makes it clear that ignoring facts is more than a failure to recount facts in an analysis or a simple disagreement with the weight a court gives to facts. *See Kipp v. Davis*, 971 F.3d at 954. Instead, the state court in *Kipp* (which was analyzing evidence for a highly distinctive pattern), misstated the record as to important evidence of similarity, and did not acknowledge evidence of dissimilarity. *Id*. at 954-55 (suggesting that weighing evidence involved acknowledging evidence of both similarity and dissimilarity). But the state court's analysis here stands in stark contrast to *Kipp*. The court expressly found that the prosecutor overstated the similarity between prior and charged offenses. That decision, read in the context of the arguments advanced in Petitioner's opening brief on appeal (*see* LD 2 at 36) demonstrates that the court correctly found that all of the prior offenses did not in fact involve oral copulation and photography; only the offenses against Autumn did. No facts were ignored or misstated, and Petitioner simply disagrees with the court's conclusion. Ground Two therefore fails under either AEDPA or de novo review.

## III. Ground Three Also Fails to Present a Federal Constitutional Claim, and In Any Event the Admission of Propensity Evidence Did Not Render Petitioner's Trial Fundamentally Unfair

Lastly, in Ground Three Petitioner claims that the admission of the propensity evidence pursuant to section 1108 rendered his trial fundamentally unfair. (FAP at 36-38, 65-68.) Like Ground One, this state law claim is not cognizable in this proceeding. In any event, the admission of propensity evidence did not render Petitioner's trial fundamentally unfair. Moreover, any error in this regard did not prejudice Petitioner.

### A. The Applicable Law

In California, California Evidence Code section 1101 generally "limits the admissibility of so-called 'propensity' or 'disposition' evidence offered to prove a person's conduct on a particular occasion." *People v. Daveggio and Michaud*, 4 Cal. 5th 790, 822-23 (2018). Section 1108 creates an exception to this rule authorizing the admission of evidence of the defendant's prior sexual offenses unless it would be unduly prejudicial pursuant to California Evidence Code section 352.[18] Section 1108 creates a "presumption in favor of admissibility." *People v. Merriman*, 60 Cal. 4th 1, 59 (2014). Nevertheless, trial courts "must engage in a careful weighing process under [California Evidence Code] section 352, and should consider whether the prior act is remote, "the degree of certainty of its commission, and the . . . similarity to the charged offense." *People v. Falsetta*, 21 Cal. 4th 903, 917 (1999).

Federal Rule of Evidence 413(a) provides that, in a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant. Rule 414(a) similarly provides that, in a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.[19]

---

[18] Section 1108 provides that "in a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." California Evidence Code section 352 provides that a trial court "in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[19] The Federal Rules of Evidence are not constitutionally based. *Dowling v. United States*, 493 U.S. 342, 352-53 (1990).

**B. The California Court of Appeal's Denial of Relief**

The California Court of Appeal rejected the assertion of error regarding the admission of Petitioner's other crimes involving young children, noting as follows:

> [Petitioner] argues the uncharged offenses against Hailee and Kasey were not similar because they did not involve oral copulation or photography. But he ignores other similarities that made the evidence highly probative. In each case, [Petitioner] spent time with the family. He initiated a period of grooming in which he bought toys or provided extra sweets. Then, he engaged in sexual misconduct to varying degrees. Common to Hailee, Kasey, and Doe was [Petitioner] using his hands to touch their vaginas. The three were similar in age when abused.
>
> [Petitioner] argues Hailee's and Kasey's roughly 16-year-old offenses were too temporally remote. However, courts have repeatedly upheld admission when the offenses occurred many years prior. Given their similarity with the charged crimes, the offenses against Hailee and Kasey were not too remote.
>
> [Petitioner] argues Hailee's and Kasey's testimony was unreliable because [Petitioner] denied their allegations, they were never proven in court, and there was no corroboration. However, [Petitioner]'s denial does not make the testimony unreliable, and neither does the lack of a conviction, especially when no charges were filed. Absence of corroboration is unsurprising given the "secretive nature of sex crimes." Ultimately, the jury was the judge of whether the testimony was credible.
>
> We have considered [Petitioner]'s additional challenges to Hailee's and Kasey's testimony and find them equally unpersuasive.
>
> [Petitioner] asserts the trial court should have excluded Autumn F.'s testimony as cumulative of [Petitioner]'s confessions and convictions. But the prosecution was not obliged to rely solely on such antiseptic

> evidence. Moreover, Autumn testified about additional acts of sexual abuse for which [Petitioner] was not charged or convicted. The court did not abuse its discretion in admitting the Evidence Code section 1108 testimony.
>
> (LD 1 at 8-9; citations omitted.)

**C. This Claim Is Not Cognizable**

As was the case with respect to Ground One, Petitioner's claim in Ground Three fails to present a federal constitutional question. *See Hendricks v. Vasquez*, 974 F.2d 1099, 1105 (9th Cir. 1992) (habeas corpus petitioner could not argue that the trial judge erred in ruling admissible evidence of other crimes, as federal habeas will not lie for errors of state law). It is therefore not cognizable in this proceeding. *See Estelle v. McGuire*, 502 U.S. at 67-68.

**D. This Claim Fails in Any Event, As the Admitted Propensity Evidence Permissibly Tended to Prove That Petitioner Was Predisposed to Molest Young Children**

Even if this claim presented a federal constitutional question, the AEDPA bars relief as the admitted propensity evidence tended to prove that Petitioner was predisposed to molest young children. The California Court of Appeal did not unreasonably apply clearly established federal law when it rejected Petitioner's claim to the contrary. The evidence was not unduly prejudicial in that it involved conduct which was no more shocking than the charged offenses, and did not take an excessive amount of time to present. The jury was instructed about how to evaluate the evidence with a standard jury instruction drafted for this purpose. (*See* LD 5 at 582; LD 6 at 1716-17.)

Petitioner contends that the admission of the evidence "crossed the line" drawn by *Payne v. Tennessee*, 501 U.S. 808 (*see* FAP at 66), but this case is not similar to *Payne* in the slightest. In *Payne*, as discussed previously, the Supreme Court reconsidered its holdings that the Eighth Amendment bars the admission of victim impact evidence during the penalty phase of a capital trial. But the Court did

not purport to set any firm parameters on when a particular piece of evidence should be excluded as so unduly prejudicial under the Due Process Clause to render a defendant's trial fundamentally unfair, rather it merely held that the possibility that a court could so conclude in a particular case warranted the lifting of the per se bar on victim impact statements. *See Payne v. Tennessee*, 501 U.S. at 825.

Petitioner offers three reasons why the safeguards provided by California Evidence Code section 352 failed in this case, in which he expressly disavows any argument that section 1108 is unconstitutional. (FAP at 65-66.) The first is that Autumn's account of her molestation was already before the jury through his recorded confessions, the prosecutor's opening statement, and the parties' stipulation to the resulting convictions. (FAP at 66.)

The California Court of Appeal rejected the contention that the testimony given by both Autumn and Hailee was cumulative because the prosecution was not obliged to rely solely on such evidence. The court cogently characterized that evidence as "antiseptic," and moreover noted that Autumn testified about additional acts of sexual abuse for which Petitioner was not charged or convicted. (LD 1 at 9.) Petitioner also asserts that Autumn's testimony that he "betrayed" her "in such a cruel manner," and that it was "sickening" and "twisted [her] mind"—none of which he objected to at trial—did not bear on the question of whether he molested Doe and was "only emotional" (FAP at 66-67 (citing LD 6 at 381, 383)), but cites no state or federal case holding that a sexual abuse victim is not entitled to comment on the nature of the crimes committed against her or the sense of being betrayed by someone she trusted when the abuse was committed.

Petitioner's second point in support of his argument is that Hailee's and Kasey's accounts described events sixteen years earlier, when they were ten and six years old, which he denied and was never charged with, and which were not corroborated by any physical evidence or witness testimony. He insinuates that the facts that Hailee's account surfaced after her mother and stepmother asked (around

the time of the news about Autumn's allegations) whether anything had happened to her, and that the sisters discussed Petitioner with each other, somehow made their testimony less credible, but points to no convincing reason why this is so. He also notes that the California Supreme Court observed that there is a danger that, where uncharged offenses did not result in conviction, jurors may be tempted to convict the defendant simply to punish him for the other offenses, which is one factor among several to consider when evaluating the potential for undue prejudice. (FAP at 67 (citing *People v. Falsetta*, 21 Cal. 4th at 917).)

However, the California Court of Appeal correctly declined to find that the testimony given by Hailee and Kasey was unreliable despite the fact that Petitioner denied their allegations, they were never proven in court, and there was no corroboration, as these were questions for the jury. The court aptly noted that Petitioner's denial of guilt and lack of a conviction did not make the testimony unreliable, and absence of corroboration was unsurprising as such crimes are generally committed in secrecy. (LD 1 at 8.) The testimony of a single witness is sufficient to establish the conviction. *See United States v. Larios*, 640 F.2d 938, 940 (9th Cir. 1981) ("The testimony of one witness . . . is sufficient to uphold a conviction."); *United States v. Jones*, 425 F.2d 1048, 1055 (9th Cir. 1970) ("[I]n this circuit, . . . the testimony of one witness, if believed, is sufficient to prove a fact.") (citation omitted); *see also United States v. Foster*, 243 F. App'x 315, 316 (9th Cir. 2007) (even testimony of one witness, if believed, is sufficient to support conviction; resolution of any question as to credibility properly entrusted to jury). And, concerning any temptation the jury may have had to convict Petitioner in order to punish him for the other offenses which were uncharged, this temptation was likely negated or at least strongly mitigated by the fact that the jury did hear evidence that Petitioner's mother told Natalie that Petitioner had been incarcerated for child sexual abuse involving sexual contact with a girl under the age of thirteen

and served a sentence of approximately three and a half years.[20] (*See* LD 6 at 791, 943-45, 1616-18.)

Petitioner's third and final point is that whatever probative value the uncharged allegations had depended on their similarity to the charged conduct and "the prosecutor supplied a similarity the record did not contain." He also asserts that the state appellate court's ruling addressed each objection in isolation and found each insufficient without ever asking whether the redundant and inflammatory testimony on an adjudicated prior conviction, two remote and uncharged accusations lacking the charged conduct's distinguishing features, and a closing argument that erased the distinction, "left [P]etitioner with a trial about what he did between 2019 and 2021 rather than who he was in 2006." (FAP at 67-68.)

The California Court of Appeal correctly rejected Petitioner's argument that the uncharged offenses against Hailee and Kasey were not similar because they did not involve oral copulation or photography. This is because he ignores other similarities that rendered the evidence highly probative. In each case, the court noted, Petitioner spent time with the victim's family, initiated a period of grooming in which he bought treats or gifts for the victims, and then engaged in sexual misconduct with them. As he did to Hailee, Kasey, and Doe, who were similar in age when they were abused, Petitioner used his hands to touch their vaginas. Given the many common characteristics of Petitioner's crimes, it is wholly unpersuasive to assert that what made the offenses similar was the issue about which the prosecutor briefly misspoke: the incorrect assertion that all the prior offenses involved oral copulation and photography. The court also found that Hailee's and Kasey's roughly sixteen-year-old offenses were not temporally remote given that California courts have repeatedly upheld admission of propensity evidence even

[20] As noted above, at trial Petitioner stipulated to his convictions for molesting Autumn. (LD 6 at 1306.)

though the offenses occurred many years earlier, as under California law it is settled that no specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible. *See People v. Robertson*, 208 Cal. App. 4th 965, 992 (2012); *see also People v. Branch*, 91 Cal. App. 4th 274, 285 (2001) (similarity between offenses "'balanced out'" a thirty-year gap]; *People v. Waples*, 79 Cal. App. 4th 1389, 1395 (2000) (twenty-year gap not too remote). (LD 1 at 8.) As to the court's alleged focus on each objection in isolation and without looking at the larger picture of how Petitioner may have been different when he committed the charged and the uncharged offenses, there is no requirement in California that appellate courts do so, especially when, as noted above, section 1108 creates a presumption in favor of admissibility. *People v. Merriman*, 60 Cal. 4th at 59.

**E. Any Error Did Not Prejudice Petitioner**

Finally, any error the trial court may have committed in this regard was harmless under *Brecht*. As noted above, the prosecution's case was quite strong. Moreover, it must be presumed that the jury followed the trial court's instructions as to the limited use of the prior crimes evidence, including the court's admonition that such evidence was not sufficient by itself to prove Petitioner's guilt. (LD 5 at 582; LD 6 at 1716-17.) Petitioner was therefore not prejudiced by any error that was committed with respect to this evidence.

## CONCLUSION

Based on the foregoing arguments and authorities, the First Amended Petition for Writ of Habeas Corpus must be denied with prejudice.

Dated: October 13, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
CHARLES C. RAGLAND
Chief Assistant Attorney General
SUSAN SULLIVAN PITHEY
Senior Assistant Attorney General
JASON TRAN
Supervising Deputy Attorney General

***/s/ Kenneth C. Byrne***
KENNETH C. BYRNE
Supervising Deputy Attorney General
*Attorneys for Respondent*

LA2026602353
68783939

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for respondent Rafael Acevedo, certifies that this brief contains 13,614 words, which:

__ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated: October 13, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California

KENNETH C. BYRNE
Supervising Deputy Attorney General
*Attorneys for Respondent*

# CERTIFICATE OF SERVICE

Case Name: **Travis Edward Martin v. Raphael Acevedo** No. **CV 25-11643-SPG-ACCV**

I hereby certify that on October 13, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**ANSWER TO FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On October 13, 2026, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

**Travis Edward Martin**
1746 F South Victoria Ave Suite 104
Ventura, CA 93003

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 13, 2026, at Los Angeles, California.

| S. Hubbard | ***/s/ S. Hubbard*** |
| --- | --- |
| Declarant | Signature |

LA2026602353
68795017